**CITY ICE & FUEL CO v CENTER**

Ohio Appeals, 1st Dist, Hamilton Co

No 5047. Decided May 4, 1936

Marble & Vordenberg, Cincinnati, for plaintiff in error.

Edward M. Ballard, Cincinnati, for defendant in error.

## OPINION

By MATTHEWS, J.

This case reaches this court on error·to the Court of Common Pleas of Hamilton County. A judgment was rendered in that court in favor of the plaintiff against the defendant therein for $1420.00.

The parties will be referred to by their titles in the trial court.

The plaintiff, a minor aged ten years, sued the defendant for damages on account of personal injuries which he alleged he received through the negligence of the defendant's employees in backing a truck against him while he was upon the sidewalk of Plum Street in front of a building used by the defendant, whereby he was crushed between the rear end of the truck and the wall of the building. The specific allegation of negligence was that: "In backing its said automobile truck as aforesaid the defendant carelessly and negligently failed to give any warning of its intention so to do, and while backing as aforesaid carelessly and negligently failed to exercise vigilance not to injure the plaintiff, and the defendant, although the plaintiff was in plain sight and easily visible, carelessly and negligently backed its said truck against plaintiff as aforesaid."

The defendant admitted the collision but denied all other allegations. In addition the defendant set forth an explanation of its denial to the effect that its employees warned the plaintiff of their intention to back the truck, warned him to stay away, but that, notwithstanding, plaintiff rushed in and the defendant's employees were unable, although they exercised reasonable care, to stop the truck before the collision, and that therefore the defendant was without fault. As a third defense the defendant relied upon the same facts as constituting contributory negligence. A reply placed this defense in issue.

At the trial, and here, the exact location of the building was in dispute. The evidence does not conclusively establish that it abutted on the public street but it does, in our opinion, show that if it did not abut it was within a very short distance of it, and, that the truck was backing in the public street and that when the rear end was against the building almost, if not, all, of the truck was in the public street.

On account of the fact that the liability, if any, results from the active negligence of persons present at the time for whose action the defendant was responsible as though personally present and acting, we do not deem it important to determine whether the plaintiff was trespassing upon real estate. Assuming such to be the fact the defendant being present █ would be charged with the duty of exercising reasonable care in its conduct toward him. In 29 Ohio Jur., 442 and 443, we find this:

"It is asserted that an owner, being aware of the presence of a trespasser, is required to use ordinary care to avoid injury to him, arising from the active negligence of such owner or that of his servants. Trespassers assume the risk of injury from the condition of the premises,

and the duty of the occupier to them is only to be careful not to injure them by bringing force to bear upon them."

The evidence is undisputed that the plaintiff and another boy about the same age, for some time prior to this accident, had been in the vicinity of this house in which the defendant stored ice. They had seen a truck drive alongside and put ice into this ice house from the truck or take ice from the house and put it in the truck, using the side of the truck in so doing. That truck moved away and then this truck was driven up. The plaintiff's version of the accident was that:

"A. Well, I started down the river bank to get some bottles and the ice truck pulled up at the side to get some ice and it pulled away and left the doors open and we saw another one coming and we went down there and felt the truck was going to back in the same way but it backed in from the rear and caught me in there. It caught me between the ice house and the truck."

He denied that anyone warned him that the truck was being, or about to be, backed, but on cross-examination he testified:

"Q. But at the time you saw it backing up to that door, didn't you? A. Yes, sir."

At no place in his testimony did he directly qualify that answer, but it seems to us there are places where his answers import the contrary. His explanation of the accident, already quoted, also seems to imply the contrary.

His companion testified that: "Then this here truck pulled away just then and another truck came down but the other truck left the door open and another truck came down and Raymond reached up in there to get a piece of ice and the truck just came on down, turned around and backed up and the truck driver never paid no attention—— The truck was just turning around when he was getting the ice—— Well, he went over there just a little before the truck turned around——Well, you see when the truck came down, it passed us, and just as the truck swung around Ray went over to get a piece of ice."

Now, if we accept the plaintiff's testimony that he "felt" that the truck would be unloaded from the side rather than the rear, it is deducible that as the plaintiff was occupied with getting the ice by reaching into the ice house door, as was admit- ted, he did not see the truck turn, and this testimony of his companion explains why his deduction from the movements of the first truck was not revised in the light of the movements of the second truck as it would appear that he probably didn't see the second truck in the act of turning. This witness said that no warning was given until the instant of the collision.

This evidence was all that supported the plaintiff's contention. It is seen that it requires indulgence in inferences to overcome the direct statement of the plaintiff that he saw the truck as it was backing.

It is admitted that the truck was backed slowly without any increase of speed.

Opposed to this testimony is that of the driver of the truck and the helper on the truck in addition to two disinterested witnesses. They corroborate one another in saying that when the truck started to back the boys were standing about ten feet away; that it backed until the rear was about four or five feet away from the ice house door, when it was stopped to permit the helper to open the door; that at that time the boys were still standing in the same place about ten feet away; that the helper opened the door and gave the driver the signal to resume backing and that then it was that the plaintiff rushed between the truck and the ice house and reached in to get the ice in spite of all that could be done and was done to stop him. Three of the witnesses said that the helper called to him loudly to stay away and attempted to push him back, but notwithstanding the driver stopped as soon as he could, the corner of the truck struck him. The fourth witness did not hear the helper say anything to the boys but she did see him motion to them.

(1) It is urged that the court should have sustained the defendant's motion for an instructed verdict. We have reached the conclusion that this motion was properly overruled.

(2) Next it is contended that in any event the verdict is manifestly against the weight of the evidence. In view of the direct statement of the plaintiff that he saw the truck as it was backing and we are left to mere inference to explain his conduct in getting or staying between the truck and the building when it was manifestly perilous to do so. We think the testimony of the other witnesses is so much weightier as to the manner of the accident that we are forced to say that the verdict is manifestly against the weight of the evidence.

(3) In a special charge and also in the general charge the court instructed the jury in the language of §6310-21, GC, that: Before backing, drivers "of vehicles shall give ample warning, and while backing vigilance shall be exercised not to injure those behind." It is urged that this was error for two reasons—(a) that the evidence did not show that the building abutted on the street, and (b) that the statute is unconstitutional and void for indefiniteness and, therefore, lacks the essential attribute of a law, that is, a rule or standard.

As to the first objection, it is sufficient to say that the record clearly shows that the house was very close to ▮▮▮▮▮ the street, if it did not actually abut, and that the movement of backing was performed in the street which made the statute applicable. The second objection is answered by a consideration of the language of the statute, whereby it will be seen that ▮▮▮▮▮ the standard established is that of reasonable care, which is a standard long recognized by the courts as sufficiently definite as a guide to conduct. **State v Schaeffer, 96 Oh St, 215.**

In Mathews v Dudley, 297 Pac., 544, the Supreme Court of California was presented with the question of whether the trial court committed error in giving a charge stating that the driver of an automobile on the public roads "must be vigilant" at all times. The objection was to the use of the word "vigilant." On this subject the court said at 546:

"The word, however, has numerous significances and synonyms, depending upon the particular place and context in which it is used and also to the subject to which in its various uses it relates. One of the meanings given to the word 'vigilant' is that contained in the Century Dictionary, wherein it is defined as 'watchful, awake and on the alert; attentive to discover and avoid danger, or to provide for safety; circumspect; cautious; wary.' If each of these synonyms of the word 'vigilant' had been employed in the instruction complained of, it could hardly, in respect to the duties of the driver of an automobile upon the public highways, be said to have been erroneous. But, however that may be, the instruction complained of has been approved by the appellate tribunals of this state in a number of decisions, some of which are the following: Meyers v Bradford, 54 Cal. App. 157, 201 P. 471; Wright v Salzberger, 81 Cal. App. 690, 701, 254 P. 671; Truitner v Knight, 83 Cal. App. 655, 661; 257 P 447; Alkus v Davies. 86 Cal. App. 355, 260 P. 894; Rush v Lagomarsino, 196 Cal. 308, 317, 237 P. 1066, and Hatzakozian v Rucker-Fuller Desk Co., 197 Cal. 82, 99, 239 P. 709, 41 A.L.R. 1027."

The other objection to the language of this charge is based on the use of the phrase "ample warning." One of the dictionary definitions of "ample" is "fully sufficient." See also: St. Louis Southwestern Ry. Co. v Haynes, (Tex.) 86 SW, 934, at 935. A warning that would discharge the duty of reasonable care would necessarily have to be ample or fully sufficient to apprise those entitled 'to the backward movement of the automobile.

We find no error in the giving of this instruction if the defendant desired a definition of the terms, it was its ▮▮▮▮▮ duty to present to the court the desired definition with the request that the court instruct the jury accordingly. **Barston v Craig, 121 Oh St, 371 at 375.**

We find no error in the refusal to give the special charges. To the extent that they stated correct rules of law they were repetition of charges that were given on the defendant's request.

Complaint is made that the court permitted the plaintiff's counsel to cross-examine one of his own witnesses, without justification. Counsel stated that he had been taken by surprise and then proceeded to ask the witness concerning the purported statements made to him by the witness. One statement by counsel to the witness on the stand was in the form of a declaration of what the witness had said to him, rather than a question to the witness on the subject. That, of ▮▮▮▮▮ course, was objectionable and objection was made to it. Whereupon the interrogatory form was added and the witness answered. While the statement should not have been phrased as an affirmation, we do not consider the matter of sufficient importance to justify a reversal on that ground. Such matters rest largely in the discretion of the trial judge. The record shows no abuse of discretion.

We find no other error, prejudicial to the defendant.

The judgment is reversed for the reason that it is manifestly against the weight of the evidence, and remanded to the trial court for further proceedings according to law.

ROSS, PJ, and HAMILTON, J, concur.